UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 10-bk-93402-crm |
| TEN SIDE HOLDINGS, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |

## DEBTOR'S EMERGENCY MOTION FOR AN ORDER
## AUTHORIZING THE USE OF CASH COLLATERAL

Ten Side Holdings, LLC (the "Debtor"), pursuant to 11 U.S.C. §§ 105, 361, and 363 and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, hereby moves the Court for the entry of an order authorizing the Debtor's use of cash collateral, and the Debtor respectfully states as follows:

### JURISDICTION

1.　On November 3, 2010 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, *et seq.* (the "Bankruptcy Code").

2.　The Debtor is continuing in possession of its property and is operating and managing its business, as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.　The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case is proper under 28 U.S.C. §§ 1408 and 1409.

12279 v5

4.    The statutory predicates for the relief requested herein are §§ 361 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

I.    **The Debtor's Operations**

5.    The Debtor owns and operates a 340,509-square foot building consisting of multiple projects. One project constitutes 336 residential units called "Tivoli Tenside", which consists of one, two and three bedroom apartment homes. Another project constitutes 38,600-square feet of ground level retail space, and another constitutes a multi-level parking garage, all located at 1000 Northside Drive, Atlanta, Georgia (collectively, the "Property").[1]

6.    The projects and their business operations are maintained and managed for the Debtor by a separate management company known as Williams Residential Management, LLC (the "Manager"). A staff of approximately five (5) employees work for the Debtor's benefit at the Property, but they are employed by the Manager. All rents and revenues from the Property are deposited into a central operating account owned by the Debtor. Tenant security deposits are deposited into a separate security deposit account maintained by the Debtor. From the Debtor's operating account, the Debtor makes monthly payments to the Manager, which in turn makes the payroll payments and other payments necessary for operating and maintaining the Property. Additionally, certain vendors and suppliers (such as landscaping, utilities, etc.) are also paid by the Manager, while other vendors and suppliers are paid directly by the Debtor from the Debtor's operating account.

---

[1] Debtor holds a special leasehold interest in the Property, which Property is owned in fee simple by the Atlanta Development Authority a part of a bond financing arrangement. Essentially, the arrangement encouraged the Debtor to construct the Property, and is a large part of the value of the Debtor's assets. The lease arrangement, however, can be cancelled by the Debtor at any time which would then automatically vest fee simple title to the Property in the Debtor.

12279 v5                                    2

**II.     The Debtor's Pre-Petition Financing**

7.      On July 6, 2007, the Debtor entered into a Construction Loan Agreement with Keybank National Association ("Keybank"), for a loan to the Debtor in the original principal amount of $44,400,000.00 (the "Original Loan").  The Original Loan is evidenced by a Promissory Note of the same date made by the Debtor to Keybank, and may be secured by, among other things, a Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement, which (i) may encumber the Property, and all improvements thereon and appurtenances thereto; and (ii) may grant Keybank a security interest in all rents, income, profits and other revenue from the Property.

8.      In addition, Debtor's sole member and owner, Ten Side Member, LLC ("Ten Side Member"), entered into a mezzanine loan agreement (the "Mezz Loan Agreement") with Capital Mezz, LLC ("Capital Mezz"), to borrow up to $10,767,307.00 (the "Original Mezz Loan").  The sole member of Capital Mezz, LLC, is the Archstone-Smith Operating Trust, a real estate investment trust organized under the laws of Maryland ("Archstone").

9.      To secure the Original Mezz Loan, Ten Side Member executed a Promissory Note in favor of Capital Mezz  for $10,767,307.00 (the "Mezz Note").

10.     To further secure the Original Mezz Loan, Ten Side Member, entered into a Pledge and Security Agreement with Capital Mezz wherein Ten Side Member pledged its membership interest in the Debtor. (the "Pledge Agreement").

11.     On February 29, 2008, the Debtor entered into a First Modification of Construction Loan Agreement (the "Loan Modification") with Keybank, for an increase of the amount of the Loan of up to $5,000,000.00.  The Loan Modification was evidenced by a First Modification to Promissory Note of the same date, and First Modification to Security

12279 v5                                                    3

Instruments. The Original Loan and the Loan Modification are hereinafter collectively referred to as the "Loan."

12. Also on February 29, 2010, Ten Side Member entered into a Modification to Loan Documents ("Mezz Loan Modification") with Capital Mezz, to increase the amount of the Mezz Loan to $14,609,327.00. The Mezz Loan Modification was evidenced by an Amended and Restated Promissory Note of the same date. The Original Mezz Loan and the Mezz Loan Modification are hereinafter collectively referred to as the "Mezz Loan."

13. As of the Petition Date, the total outstanding balance on the Loan was approximately $45,778,222.04. The funds of the Debtor in hand, all rents, income, profits, and other revenue from the Property are collectively referred to as the "Cash Collateral."[2]

### III. Events Leading to Chapter 11 Filing

14. The continued decline in the economy has had a significant effect on the Debtor's business over the past year. In response to these economic challenges, the Debtor has been constantly working with its lenders and with third parties to find the most economical solution.

15. Specifically, in the months leading up to the Petition Date, Keybank was in negotiations regarding the sale of the Loan to a joint venture between affiliates of the Debtor and a third-party investor. Substantial progress was made towards a deal whereby a joint venture of multiple parties (the "Third Party"), would purchase the Loan from Keybank and make a significant payment to Capital Mezz (in exchange for a release of the mezzanine obligations).

16. The deal was stalled, however, by the discovery of potential environmental liability connected to the Property.

---

[2] The rents and other revenue derived from the Property after the Petition Date may constitute Cash Collateral within the meaning of Sections 363(a) and 363(c)(2) of the Bankruptcy Code.

17. During the due-diligence process, and by necessity, a large amount of disclosure by the Debtor of confidential information to Keybank and Capital Mezz was made. While the due-diligence and investigation were being conducted, the Debtor and the Third Party continued to negotiate in good faith with Keybank and Capital Mezz regarding the purchase of the Loan and satisfaction of the Mezz Loan.

18. Upon information and belief, Capital Mezz, through its sole member Archstone, began contacting another entity, Waterton Associates, LLC ("Waterton Associates") regarding the possible interest of Waterton Associates in purchasing the Loan. Waterton Associates relayed an interest in a deal, and requested further information.

19. Upon information and belief, Waterton Associates became aware of the Mezz Loan Agreement, including its confidentiality requirements, which specifically command Capital Mezz, to "keep confidential any and all information obtained as a result of any inspection permitted hereunder…" § 5.4(c), Mezz Loan Agreement.

20. Upon information and belief, Waterton Associates requested that Archstone send to Waterton Associates confidential information obtained from the Debtor during inspections regarding, inter alia, the potential environmental liability, and such a request was knowingly made in violation of the Mezz Loan Agreement so that Waterton Associates could gain an improper advantage in bidding to purchase the Loan. Additionally, upon information and belief, Archstone provided confidential financial and other information about the Property to Waterton Associates in direct violation of the Mezz Loan Agreement. Upon information and belief, Archstone and Capital Mezz, acquiesced and assisted in these blatant breaches of the Mezz Loan Agreement.

21. Waterton Associates then used the information to negotiate with Keybank, and on October 21, 2010, Keybank endorsed, transferred and assigned the Loan, together with all of Keybank's rights, title, and interest in and to the Loan and related documents, to a special purpose entity, Waterton Tenside N.H., LLC ("Waterton"), for an amount substantially lower than the amount bid by the Third Party.

22. Upon information and belief, Waterton purchased the Loan from Keybank with the sole purpose of immediately foreclosing on the Property.

23. Upon information and belief, Waterton and Capital Mezz have entered into an agreement whereby Capital Mezz would receive a monetary benefit from Waterton should it succeed in its foreclosure action against the Debtor.

24. Ten Side Member is currently involved in a lawsuit against Waterton Associates, Archstone, and others regarding this tortious activity, which lawsuit is Case No. 2010-CV-192472 in the Superior Court of Fulton County, Georgia.

25. After the sale of the Loan, Waterton brought a subsequent action against the Debtor in the Superior Court of Fulton County, Georgia, Case No. 2010-CV-192623, asking for a court appointed receiver to take control of the Property (the "Waterton Lawsuit").  Waterton intends to foreclose on the Property as soon as possible, thus free-riding off the labor of the Third Party and reaping a windfall which they, upon information and belief, achieved only by knowingly and tortiously interfering with the contracts and prospective business relations of the Debtor.

26. On November 3, 2010, the Superior Court of Fulton County scheduled a hearing in the Waterton Lawsuit regarding the appointment of a receiver, but before any order was entered, the Debtor filed its petition to protect its property and going concern value, preserve the

significantly better deal offered by the Third Party, maximize the payout to all creditors, and prevent Waterton, Archstone, and Capital Mezz, from reaping a windfall from their tortious conduct.

27.    Per recent discussions by the Debtor with the Third Party, the Third Party still desires to purchase the Loan or the Property under the terms of the original agreement-in-principle and will take an active role in this case.

## RELIEF REQUESTED

28.    The Debtor seeks authorization to use Cash Collateral in accordance with a budget of projected income and disbursements (the "Budget") for the purpose of meeting the general and administrative expenses as set forth in the Budget[3].  A proposed "Interim Order Authorizing Use of Cash Collateral" (the "Proposed Order") is attached hereto as **Exhibit A**.

29.    The Debtor has an immediate need for the use of cash collateral in light of the immediate and irreparable harm that will be suffered by the Debtor's estate if it does not have access to the cash necessary to sustain its businesses as a going concern.  The Debtor has an urgent need to use cash for, among other things, continuing the operation of the company in an orderly manner, maintaining business relationships with vendors, suppliers, and advertisers, providing for the payment by the Manager of employees, and satisfying other working capital and operational needs--all of which are vital to preserving and maintaining the Debtor's going-concern value and, ultimately, effectuating a successful reorganization for the benefit of all parties in interest, including unsecured creditors, and not just for the benefit of Waterton.

30.    The Debtor uses funds deposited in its bank accounts to fund its day-to-day operations and, most significantly, to fund the Manager who is responsible for the lion's share of

---

[3] The Debtor will be supplementing this Motion to provide a proposed budget.

12279 v5                                                          7

the activities on the Property. As of the Petition Date, the Debtor had approximately $439,782.93 of cash on hand which may comprise Cash Collateral.

31. The proposal for interim use of Cash Collateral is intended to provide sufficient working capital while the Debtor operates in chapter 11. The Debtor's use of Cash Collateral will be governed (subject to permitted expenditure variances) by a cash collateral budget (the "Budget") and will be used mainly to preserve and maintain the value of the Debtor's assets for the benefit of the Debtor's estate and creditors. The Budget will be filed separately shortly after this Motion and will include the Debtor's cash flow forecasts for the next 13 weeks.

32. To successfully navigate through the next 13 weeks of this Chapter 11 case, it is extremely important that the Debtor maintains sufficient liquidity to support the continued ordinary course operation of the Debtor's business notwithstanding the challenges posed by market conditions and the filing of this Chapter 11 case. Immediate access to Cash Collateral will enable the Debtor to demonstrate to its vendors, suppliers, advertisers, and employees that they have sufficient capital to ensure ongoing operations. Absent authorization to use the Cash Collateral, the Debtor will be unable to sustain its business and will be irreparably harmed.

## BASIS FOR RELIEF REQUESTED

Bankruptcy Code Section 363(c)(2) provides that a debtor in possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the Court approves the use. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor in possession has the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 15 days after service of the motion, but

may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

The focus of adequate protection is to protect the secured creditor from any decline in value of its collateral during the bankruptcy period. *See In re Delta Resources, Inc.*, 54 F.3d 722, 730 (11th Cir. 1995)(stating that adequate protection "encompasses the decline in value of the collateral only"); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich.1988). As this Court has explained, adequate protection is not necessary where the collateral is not declining in value:

> [A]dequate protection payments are intended primarily to protect the creditor from diminution in value of its collateral during the pendency of a bankruptcy case. . . . If the secured creditor is suffering no loss other than nonreceipt of regular monthly payments and inability to foreclose, the creditor is not entitled to adequate protection.

*In re Club Associates,* 107 B.R. 385, 394 (Bankr. N.D.Ga. 1989)(Murphy, J.); *see also*, *In re Orlando Trout Creek Ranch*, 80 B.R. 190, 191 (Bankr. N.D. Cal. 1987)(secured portion of creditors undersecured claim may be deemed adequately protected where the security is not depreciating).

Even where the collateral is declining and adequate protection is necessary, adequate protection may be afforded through several means. Section 361 of the Bankruptcy Code provides examples of adequate protection, which include "replacement liens," "periodic cash payments," and other measures which provide an "indubitable equivalent." The Code's examples constitute a non-exhaustive list. *In re Nashua Trust Co.*, 73 B.R. 423, 430 (Bankr. D.N.J. 1987); *In re Club Associates, supra.* 107 B.R. at 394 n. 13 ("In some instances, a creditor can be

adequately protected by means other than payments to the secured creditor. For example, a creditor may be offered a replacement lien. . .[or] a creditor may be adequately protected by payments to third parties such as payments for insurance or taxes. . .").

The Debtor submits that Waterton is adequately protected because the Debtor proposes the following: (a) the granting of replacement liens on the Debtor's property of the same type and nature that may secure Waterton's pre-petition claim; (b) the use of Cash Collateral in accordance with the Budget which will maintain and enhance the Property and normal business operations so as to preserve the going concern value of the Property, and which includes monthly escrow payments to cover property taxes and property insurance and (c) commencing monthly cash payments in an amount equal to the non-default rate of interest on the value of Waterton's interest in the Property[4].

As noted already, the Bankruptcy Code expressly provides that "replacement liens" are a means of adequate protection, 11 U.S.C. § 361(2), and adequate protection may be further provided through the preservation of the collateral and the going concern value of the business at the Property. Indeed, the disruption of cash collateral usage by the Debtor would only impair business operations and result in an overall decline in the value of the Property. *See, e.g., Federal Nat. Mortgage v. Dacon Bolingbrook Assoc., supra.* 153 B.R. at 214 (holding that Fannie Mae's request for adequate protection as a result of the Debtor's use of post-petition rents was "satisfied to the extent the Debtor reinvests the Rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased."); *In re Constable Plaza Associates*, 125 B.R. 98, 105 (Bankr. S.D.N.Y.

---

[4] The Debtor reserves its rights and claims as to the proper application of such payments toward the Loan, including having such payments applied to the principal balance of the Loan if it is determined that Waterton is not entitled to recover post-petition interest or reasonable attorney's fees in this case.

1991)("debtor's plowing back rents solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage.").

Finally, the Debtor's proposed commencement of monthly interest payments to Waterton provides further adequate protection.  *See* 11 U.S.C. §§ 361(1).  However, nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

In light of the fact that the Property is essential to the Debtor's reorganization and that use of the cash collateral in accordance with the Budget is necessary to maintain and operate the Property, Waterton will be adequately protected and this Court should authorize the use of Cash Collateral in accordance with the Budget.

## **NOTICE**

In accordance with Rule 4001(b)(1), notice of this Motion has been provided to counsel for Waterton, counsel for Capital Mezz, the U.S. Trustee, and the Top 20 creditors.

WHEREFORE, the Debtor respectfully prays that the Court (a) schedule an interim and final hearing on this Motion, (b) authorize the Debtor to use Cash Collateral by entering an order granting substantially the same relief contained in the proposed order attached hereto, and (c) grant the Debtor such other and further relief as the Court deems just and proper.

12279 v5

11

Dated November 7, 2010.

                        Respectfully submitted,

                        /s/ Denise D. Dell-Powell
                        Denise D. Dell-Powell, Esq.
                        Georgia Bar No. 217070
                        Burr & Forman, LLP
                        450 S. Orange Avenue, Suite 200
                        Orlando, FL 32801
                        Telephone:  (407) 244-0888
                        Facsimile:  (407) 244-0889
                        Email:  ddpowell@burr.com

                        and

                        Brad A. Baldwin
                        Georgia Bar No. 034220
                        Burr & Forman, LLP
                        171 17th Street, NW - Suite 1100
                        Atlanta, GA 30363
                        Telephone:  (404) 815-3000
                        Facsimile: (404) 214-7930
                        Email:  bbaldwin@burr.com

                        **PROPOSED COUNSEL TO DEBTOR**

## **EXHIBIT A**

12279 v5

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **In re:** | **Case No.:  10-bk-93402-crm** |
| **TEN SIDE HOLDINGS, LLC,** | **Chapter 11** |
| **Debtor.** | |
| _____/ | |

**INTERIM ORDER ON DEBTOR'S MOTION FOR AN ORDER
AUTHORIZING THE USE OF CASH COLLATERAL**

Before the Court is the *Debtor's Motion For An Order Authorizing The Use Of Cash Collateral* (the "**Motion**").  A hearing on the Motion was held by the Court on _____, 2010 (the "**Hearing**").  Having reviewed and considered the record and the statements of those parties present at the Hearing,  the Court HEREBY FINDS AS FOLLOWS:

A.    On November 3, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").  No trustee or official committee of unsecured creditors has been appointed in this case, and the Debtor continues in possession of its properties and operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.    The Debtor owns and operates a 340,509-square foot building consisting of multiple projects.  One project constitutes 336 residential units, another constitutes 38,600-

12279 v5

square feet of ground level retail space, and another constitutes a parking garage, all located at 1000 Northside Drive, Atlanta, Georgia (collectively, the "Property").

D. The projects and their business operations are maintained and managed for the Debtor by a separate managing company known as Williams Residential Management, LLC (the "Manager").  A staff of approximately five (5) employees work for the Debtor's benefit at the Property, but they are employed by the Manager.  All rents and revenues from the Property are deposited into a central operating account owned by the Debtor.  Tenant security deposits are deposited into a separate security deposit account maintained by the Debtor.  From the Debtor's operating account, the Debtor makes monthly payments to the Manager, which in turn makes the payroll payments and other payments necessary for operating and maintaining the Property.  Additionally, certain vendors and suppliers (such as landscaping, utilities, etc.) are also paid by the Manager, while other vendors and suppliers are paid directly by the Debtor from the Debtor's operating account.

E. Waterton Tenside NH, LLC ("Waterton"), is the secured lender of the Debtor by virtue of Keybank National Association's endorsing, transferring and assigning the Loan[5], together with all of rights, title, and interest in and to the Loan and related documents.

F. For purposes of this Order, the rents and other revenues derived from the Property (collectively, the "Rents"), may constitute cash collateral within the meaning of Sections 363(a) and 363(c)(2) of the Bankruptcy Code, and such monies, and the proceeds of the Loan, are referred to hereinafter as the "Cash Collateral."

G. The Debtor requires the use of Cash Collateral to preserve, maintain and support the Property and the continuing business operations thereof, including making payroll, paying utilities, and meeting ordinary working capital expenses.  Serious and potentially irreparable harm to the Debtor and the Debtor's estate may occur absent the Debtor's use of the Cash Collateral.

H. Debtors' counsel has certified that a copy of the Motion, together with notice of the Hearing, has been served upon the United States Trustee, counsel for Waterton, counsel for Capital Mezz, LLC, the Debtor's 20 largest unsecured creditors as reflected in Petition filed with the Court, and any creditors known to claim any liens upon any of the Cash Collateral.  The Court finds that notice of the Motion and the Hearing is sufficient under the circumstances.

I. Good cause has been shown for the entry of this Order and for the Debtor's use of Cash Collateral.  For reasons stated on the record and contained in this Order, the Court finds that Waterton is adequately protected by the Debtor's use of cash collateral in accordance with the terms of this Order.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED as follows.

---

[5] All capitalized terms not described herein shall have the same meaning as set forth in the Motion.

12279 v5                                                                 15

      1.      The Motion is **GRANTED** according to the terms and provisions of this Order.

      2.      <u>Establishment of Cash Collateral Accounts.</u> The Debtor shall provide for the establishment of the following post-petition bank accounts which shall be designated as debtor-in-possession accounts:

      (A)    <u>Operating Account</u>:  an operating account into which will be deposited all Rents and Cash Collateral other than tenant security deposits;

      (B)    <u>Security Deposit Account</u>:  a deposit account into which Debtor shall deposit all tenant security deposits, such funds to be held by the Debtor in escrow for disbursement in the ordinary course of business in accordance with the tenant lease agreements governing such security deposits;

      (C)    <u>Tax & Insurance Escrow Accounts:</u>  two separate deposit accounts for depositing (i) monthly payments equal to 1/12th the estimated annual ad valorem taxes on the Property (the "Tax Account") and (ii) monthly payments equal to 1/12th the estimated insurance premiums necessary to provide insurance coverage for the Property (the "Insurance Account")

      3.      <u>Authority To Use Cash Collateral.</u>  Pending the entry of a final order, the Debtor is authorized to use Cash Collateral to pay the actual and necessary expenses incurred in the ordinary course of the operation and maintenance of the Property, but only in the amounts and to the extent said expenses are listed on the budget attached hereto as **Exhibit A** (the "Budget").  In addition to the expenses listed in the Budget, the Debtor may use the Cash Collateral to pay the quarterly fee(s) due to the United States Trustee pursuant to 28 U.S.C. § 1930, and the Debtor may further use Cash Collateral to pay the actual utility charges and deposits required under Section 366 of the Bankruptcy Code.

      (a) *Budget Amounts*.  Absent the written consent of Waterton or further order of this Court, the Debtor's use of Cash Collateral shall not exceed the aggregate monthly Budget amount for any given month by more than twenty percent (20%).  Except as allowed by any separate order of this Court, the Debtor shall not use Cash Collateral or any other property of the Debtor's estate to pay pre-petition debts or obligations of the Debtor.

      (b) *Professional Fees*.  Any legal fees paid pursuant to the Budget to Debtor's bankruptcy counsel shall be held in escrow and trust by Debtor's bankruptcy counsel and shall not be applied to any fees or expenses without such fees and expenses having first been approved by an order of this Court following the filing with the Court of the required applications seeking the approval and payment of requested fees and expenses. The Debtor may continue to pay the fees of ordinary course professionals listed in the Budget normally engaged in the ordinary course of the Debtor's business and not involved with the administration of the Debtor's bankruptcy case (such as legal fees for tenant evictions, etc.).

12279 v5                                                 16

(c) *Excess Income*.  All excess monies in the Debtor's possession not disbursed pursuant to the Budget shall be maintained by the Debtor in its operating account and shall only be disbursed in accordance with any subsequent orders of this Court.

(d) *Supplemental Budgets*.  At any time prior to the expiration of the attached Budget, the Debtor may file with the Court and serve on all parties in interest supplemental budgets to modify the attached budget or cover future time periods; provided such supplemental budgets shall not change the amount of any adequate protection payments required under this Order to Waterton.  In the event no objection is filed to such supplemental budgets within ten (10) days after service, then such supplemental budgets shall supersede the attached Budget and constitute the Budget for purposes of this Order.  In the event an objection is filed, the Court shall schedule a hearing on the objection.

4. <u>Adequate Protection</u>.  For the purpose of providing any adequate protection required under the Bankruptcy Code to Waterton for its interests in the Property and the Debtor's use of Cash Collateral, the Debtor shall provide or undertake the following:

(a) *Insurance / Tax Escrow Payments.*  Debtor shall pay into the Insurance Account the normal monthly payment of approximately $_____ required under the Loan Documents for the purpose of paying insurance premiums for general hazard and liability insurance on the Property, such funds to be maintained in such account until such insurance premiums are due and payable, at which times the Debtor shall pay such premiums from the amounts on deposit in the Insurance Escrow Account.  The Debtor shall pay into the Tax Account the normal monthly payment of approximately $_____ required under the Loan Documents for the purpose paying the estimated ad valorem taxes and assessments on the Property, to be maintained in such account until such taxes are due and payable, at which time the Debtor shall pay such taxes to the extent it has available funds in the Tax Account.

(b) *Replacement Liens*.  Waterton is hereby granted a security interest and lien (the "Replacement Liens") in and upon all of the Debtor's property acquired after the Petition Date (but excluding claims, causes of action and avoidance actions arising under the Bankruptcy Code, including but not limited to Sections 506(c), 544, 547, 548, 549 and 553 of the Bankruptcy Code) that are of the same type or nature of property in which Waterton holds a valid, perfected and non-avoidable security interest prior to the Petition Date.

(c) *Cash Payments*.  The Debtor shall make payments to Waterton in an amount equal to the non-default rate of interest under the Loan .  However, the Debtor rights and claims as to the proper application of such payments toward the Loan, including having such payments applied to the principal balance of the Loan if it is determined that Waterton is not entitled to recover post-petition interest or reasonable attorney's fees in this case, are preserved for later adjudication.

12279 v5                                                17

(d) *Financial Information*.  The Debtor shall provide monthly to Waterton's counsel and the United States Trustee's office a copy of the Debtor's monthly operating report required to be filed pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy procedure.  To the extent not contained in such operating reports, the Debtor shall also provide Waterton with the monthly rent roll for the Property and a monthly management summary of all disbursements and expenses relating to the Property.

(e) *Access to Property*.  Waterton and its authorized representatives shall be permitted reasonable access to the Property upon 3 business days' notice to the Debtor and Debtor's counsel for the purpose of inspection of the condition and management of the Property, verification of rent rolls and monthly operating reports, and conducting any desired appraisals.

(f) *Payment Delivery Information*.  All payments made by the Debtor to Waterton pursuant to this Order may be delivered to the same agent that the Debtor customarily delivered similar payments under the Loan Documents prior to the Petition Date.

5. <u>Reservation of Rights</u>. Nothing in this Order shall be construed as a waiver by the Debtor or Waterton of any rights, claims, defenses, or objections they may have (a) respecting the nature, amount, validity, priority or perfection of any pre-petition liens or security interests asserted against the Debtor or the Debtor's property,  (b) respecting requests for relief from the automatic stay under 11 U.S.C. § 362(d), or (c) respecting demands for adequate protection in addition to those provided by this Order.

6. <u>Final Hearing</u>.  A final hearing on this Motion shall be held on _____.  Debtor's counsel shall serve a Notice of Hearing upon all required parties and shall file a certificate of service.

END OF DOCUMENT.

Prepared and presented by:

/s/ Denise D. Dell-Powell
Denise D. Dell-Powell, Esq.
Georgia Bar No. 217070
Burr & Forman, LLP
450 S. Orange Avenue, Suite 200
Orlando, FL 32801
Telephone:  (407) 244-0888
Facsimile:  (407) 244-0889
Email:  ddpowell@burr.com

and

12279 v5                                                        18

Brad A. Baldwin
Georgia Bar No. 034220
Burr & Forman, LLP
171 17th Street, NW - Suite 1100
Atlanta, GA 30363
Telephone:  (404) 815-3000
Facsimile: (404) 214-7930
Email:  bbaldwin@burr.com

*Proposed Counsel to Debtor*

12279 v5                                                    19