**IT IS ORDERED as set forth below:**

Date: December 08, 2010

_____
C. Ray Mullins
U.S. Bankruptcy Court Judge

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 10-bk-93402-crm |
| TEN SIDE HOLDINGS, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**AGREED FINAL ORDER ON DEBTOR'S MOTION FOR AN ORDER
AUTHORIZING THE USE OF CASH COLLATERAL**

Before the Court is the *Debtor's Motion For An Order Authorizing The Use Of Cash Collateral* (Docket # 7, the "**Motion**"). A final hearing on the Motion was scheduled by the Court for December 8, 2010 (the "**Hearing**"). Having reviewed and considered any statements on the record of those parties present at the Hearing, the Court HEREBY FINDS AS FOLLOWS:

A. On November 3, 2010 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"). No trustee or official committee of unsecured creditors has been appointed in this case, and the Debtor continues in possession of its properties and operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C. The Debtor owns and operates certain real estate located at 1000 Northside Drive, Atlanta, Georgia (the **"Property"**).

D. Waterton Tenside NH, LLC (**"Waterton"**), asserts it is the secured creditor of the Debtor by virtue of Keybank National Association's endorsing, transferring and assigning the Loan[1], together with all of rights, title, and interest in and to the Loan and related documents.

E. For purposes of this order (the **"Final Order"**) and without prejudice for any other purpose, the rents and other revenues derived from the Property (collectively, the **"Rents"**), may constitute cash collateral within the meaning of Sections 363(a) and 363(c)(2) of the Bankruptcy Code, and such monies, and the proceeds of the Loan, are referred to hereinafter as the **"Cash Collateral."**

F. The Debtor requires the use of Cash Collateral to preserve, maintain and support the Property and the continuing business operations thereof, including making payroll, paying utilities, and meeting ordinary working capital expenses. Serious and potentially irreparable harm to the Debtor and the Debtor's estate may occur absent the Debtor's use of the Cash Collateral.

G. Debtors' counsel has certified that a copy of the Motion, together with notice of the Hearing, has been served upon the United States Trustee, counsel for Waterton, counsel for Capital Mezz, LLC, the Debtor's 20 largest unsecured creditors as reflected in Petition filed with the Court, and any creditors known to claim any liens upon any of the Cash Collateral. The Court finds that notice of the Motion and the Hearing is sufficient under the circumstances.

H. Good cause has been shown for the entry of this Final Order and for the Debtor's use of Cash Collateral. For reasons stated on the record and contained in this Final Order, the Court finds that Waterton is adequately protected by the Debtor's use of cash collateral in accordance with the terms of this Final Order.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED as follows.

1. The Motion is **GRANTED** according to the terms and provisions of this Final Order.

2. <u>Establishment of Cash Collateral Accounts</u>. The Debtor shall provide for the establishment of the following post-petition bank accounts which shall be designated as debtor-in-possession accounts:

    (a) *Operating Account*. An operating account into which will be deposited all Rents and Cash Collateral other than tenant security deposits;

---

[1] All capitalized terms not described herein shall have the same meaning as set forth in the Motion.

2

334687 v4

    (b) *Security Deposit Account*.  A deposit account into which Debtor shall deposit all tenant security deposits, such funds to be held by the Debtor in escrow for disbursement in the ordinary course of business in accordance with the tenant lease agreements governing such security deposits;

    (c) *Tax Escrow Account*.  One or more separate deposit accounts for depositing monthly payments equal to 1/12th the estimated annual ad valorem taxes on the Property (the **"Tax Account"**).

All cash, income or revenues received by the Debtor shall be deposited into the debtor-in-possession bank accounts or such other accounts as may be permitted to be maintained pursuant to this or separate order of this Court (the **"DIP Accounts"**).  All disbursements from the DIP Accounts shall be made strictly in accordance with the terms of this Final Order and shall be accounted for in the monthly debtor-in-possession operating reports to be filed by the Debtor with the Court and in any reporting requirements contained herein.

  3. <u>Authority To Use Cash Collateral</u>. Until the Termination Date (defined below), the Debtor is authorized to use Cash Collateral to pay the actual and necessary expenses incurred in the ordinary course of the operation and maintenance of the Property, but only in the amounts and to the extent said expenses are listed on the budget attached hereto as **Exhibit A** (the **"Budget"**).  The term for use of Cash Collateral shall be for a period through and including August 1, 2011 or as otherwise ordered by the Court (the **"Term"**).  In addition to the expenses listed in the Budget, the Debtor may use the Cash Collateral to pay the quarterly fee(s) due to the United States Trustee pursuant to 28 U.S.C. § 1930, and upon the written approval of Waterton or further order of Court, the Debtor may further use Cash Collateral to pay the actual utility charges and deposits required under Section 366 of the Bankruptcy Code.

    (a) *Budget Amounts*. Absent the written consent of Waterton or further order of this Court, the Debtor is authorized to exceed expense line items in the Budget by no more than ten percent (10%) of such Budgeted expense line item amount, but only for so long as the aggregate expenses do not exceed five percent (5%) of the aggregate expenses for such Budget period.  Except as allowed by any separate order of this Court, the Debtor shall not use Cash Collateral or any other property of the Debtor's estate to pay pre-petition debts or obligations of the Debtor.  The term Budget or budget as used herein shall also refer to any applicable subsequent budget.  Subject to the variance provisions contained in the first sentence of this paragraph 3(a), the "Total Contingency" line item for any monthly Budget period shall only be used on existing line items contained in such monthly Budget.

    (b) *Debtor's Professional Fees*.  The Budget may contain a line item for the payment of Debtor's reasonable professional fees and expenses, but only in an amount no greater than $15,000 per month on a cumulative basis (November, 2010 to be treated as a full month).  Such amounts shall be paid only in accordance with subsequent orders of the Court authorizing such payment,

3

including any interim compensation procedures approved by the Court. Waterton shall not unreasonably object to proposed interim compensation procedures consistent with those customarily approved by the courts in this district.

(c) *Excess Income*. All excess monies in the Debtor's possession not disbursed pursuant to the Budget shall be maintained by the Debtor in its operating account and shall only be disbursed in accordance with any subsequent orders of this Court.

(d) *Supplemental Budgets*. At any time prior to ten (10) days prior to the expiration of the attached Budget, the Debtor may file with the Court and serve on all parties in interest supplemental monthly budgets (covering 3 calendar months or more) to modify the attached budget or cover future time periods; provided such supplemental budgets shall not change the amount of any adequate protection payments required under this Final Order to Waterton; and provided that the Debtor shall file a supplemental budget no less than monthly. In the event no objection is filed to such supplemental budgets within ten (10) days after service of such supplemental budget and any required budget reconciliations, then such supplemental budget shall supersede the attached Budget and constitute the Budget for purposes of this Final Order. In the event an objection is filed, the Court shall schedule a hearing on the objection.

4. Adequate Protection. For the purpose of providing any adequate protection required under the Bankruptcy Code to Waterton for its interests in the Property and the Debtor's use of Cash Collateral, the Debtor shall provide or undertake the following:

(a) *Insurance and Tax Escrow Payments.* Debtor shall timely pay all premiums or premium financing obligations necessary to maintain casualty, liability and any other insurance for the Property as required under the Loan Documents with Waterton. The Debtor shall pay into the Tax Account monthly an amount equal to 1/12th the estimated ad valorem taxes and assessments on the Property, to be maintained in such account until such taxes are due and payable, at which time the Debtor shall pay such taxes to the extent it has available funds and shall be entitled to use funds in the Tax Account for such payment(s). Any liens granted to Waterton hereunder shall attach to all funds in the Tax Account until such funds are paid pursuant to this or subsequent order of this Court. Any liens granted to Waterton hereunder shall attach to any proceeds of any insurance policies, to the same extent, validity, priority, and enforceability of Waterton's asserted pre-petition liens.

(b) *Replacement Liens*. Waterton is hereby granted a security interest and lien (the **"Replacement Liens"**) in and upon all of the Debtor's property acquired after the Petition Date (but excluding claims, causes of action and avoidance actions arising under the Bankruptcy Code, including but not limited to Sections 506(c), 544, 547, 548, 549 and 553 of the Bankruptcy Code) that are of

the same type or nature of property in which Waterton holds a valid, perfected and non-avoidable security interest prior to the Petition Date.

     (c)    *Cash Payments*.  Regarding the cash payments made pursuant to this paragraph, all rights and claims are reserved for later adjudication as set forth in the Reservation of Rights herein, including but not limited to, (1) the applicable non-default contract rate of interest under the Loan; and (2) proper application of such payments toward the Loan, including having such payments applied to the principal balance of the Loan for any lawful reason, including if it is determined that Waterton is not entitled to recover post-petition interest or reasonable professional fees in this case.  The following cash payments are for adequate protection purposes only.

        i.    *Payment Amount / Date*.  By the fifth (5th) day of each calendar month, commencing with the month of December, 2010, the Debtor shall make monthly adequate protection payments to Waterton in the amount of $100,000.  No amount of the adequate protection payment of $111,000 made for November, 2010 shall be reallocated to any other adequate protection Cash Payments made hereunder.

        ii.    *Waterton's Professional Fees and Expenses*.  The Debtor shall reimburse Waterton's reasonable professional fees and expenses of its attorneys and other professionals related to these cases (notwithstanding omission of such fees and expenses on the Budget or any subsequent budget), but not in excess of $10,000 per month on a cumulative basis (November, 2010 to be treated as a full month).  Waterton's counsel shall serve a redacted statement of fees and expenses, which notice shall be served on the Debtor's counsel and the Office of the United States Trustee.  These parties shall have seven (7) business days after the date the billing statement is served via email and U.S. mail to file an objection to the payment of such fees and expenses.  Absent objection, the Debtor shall pay such amounts within five (5) business days of expiration of the objection period.  The Court shall determine any objections or disputes arising under this provision.

     (d)    *Financial Information*.  The Debtor shall provide to Waterton within five (5) business days of written request to the Debtor supporting documentation with respect to any Budgeted items and any subsequent budgeted items.  Within ten (10) days after the end of each calendar month, the Debtor shall provide Waterton, in the format of the budget, a line item comparison of the budget amounts to actual amounts for the immediately concluding monthly budget period, including a line item explanation for any variances of more than five percent (5%).   The Debtor shall provide monthly to Waterton's counsel and the United States Trustee's office a copy of the Debtor's monthly operating report required to be filed pursuant to the Bankruptcy Code and the Federal Rules of

5

Bankruptcy procedure. The Debtor shall also provide to Waterton within ten (10) days of the end of each calendar month, the monthly rent roll for the Property and a monthly management summary of all disbursements and expenses relating to the Property.

(e)     *Access to Property*. Waterton and its authorized representatives shall be permitted reasonable access to the Property during normal business hours upon 3 business days' notice to the Debtor and Debtor's counsel for the purpose of inspection of the condition and management of the Property, verification of rent rolls and monthly operating reports, and conducting any desired appraisals.

(f)     *Payment Delivery Information*. All payments made by the Debtor to Waterton pursuant to this Final Order shall be delivered by wire pursuant to the following wire instructions:

<u>Wire Instructions for</u>
Waterton Tenside NH, LLC
30 S. Wacker Suite 3600
Chicago, IL 60606

Bank:            Bank of America, N.A.
ABA No.:        026009593
Account Title:  Waterton Tenside NH, LLC
Account No.:    898045811042

(g)     Any cash received directly by the Debtor from Waterton's collateral shall be kept by the Debtor in its applicable debtor-in-possession operating accounts and shall not be transferred to any other party except pursuant to the Cash Collateral budgets approved by the Court or agreement of the Debtor and Waterton.

(h)     *Perfection*. The liens granted to Waterton herein shall be valid and perfected without the need for the execution or filing of any further document or instrument otherwise required to be filed under applicable non-bankruptcy law. However, the Debtor and its officers and agents are authorized and directed to execute, file, and record any security agreements, financing statements, instruments, or other documents as may be reasonably requested by Waterton to evidence and/or perfect the liens and/or security interests granted herein. Waterton is hereby authorized to file and/or record any such documents, and the automatic stay pursuant to 11 U.S.C. § 362 is hereby modified to allow Waterton to file and record such documents as are necessary to evidence and perfect the replacement liens granted herein.

5. <u>Reservation of Rights</u>. Nothing in this Final Order shall be construed as a waiver by the Debtor or Waterton of any rights, claims, defenses, or objections they may have (a) respecting the nature, amount, validity, priority or perfection of any pre-petition claims, liens or security interests asserted against the Debtor or the Debtor's property, (b) respecting requests for relief from the automatic stay under 11 U.S.C. § 362(d), (c) respecting requests to modify this Final Order, (d) respecting requests to seek the dismissal or conversion of this case, (e) respecting demands for adequate protection in addition to those provided by this Final Order including but not limited to 11 U.S.C. § 507(b), or (f) any other factual or legal issue.

6. <u>Successors and Assigns</u>.  The provisions of this Final Order are binding on all parties and their respective successors and assigns.

7. <u>Conflicts</u>.  In the event of any inconsistency between this Final Order and the Budget, the terms of this Final Order shall control.

8. <u>Termination</u>.  The Debtor's authority to use cash collateral as provided herein shall terminate immediately upon the earlier of:  (i) the expiration of the Term; (ii) the entry of an order modifying or extending this Final Order; (iii) the appointment of a chapter 11 trustee in the Debtor's case; (iv) a default in the performance or observance of any material provision of this Final Order as determined by the Court; (v) the conversion of the case to chapter 7 of the Bankruptcy Code; (vi) dismissal of the case; (vii) the effective date of any plan under section 1129 of the Bankruptcy Code; and (viii) the closing date of any sale of substantially all of the Debtor's assets under section 363 of the Bankruptcy Code.  The date on which the earliest of the foregoing takes place shall be known as the **"Termination Date."**

### END OF DOCUMENT ###

| Prepared and presented by: | Consented to as to form by: |
|---|---|
| /s/ Brad A. Baldwin | /s/ Paul M. Rosenblatt |
| Brad A. Baldwin | Paul M. Rosenblatt |
| Georgia Bar No. 034220 | (GA Bar No. 614522) |
| BURR & FORMAN, LLP | Jeffrey P. Fuller |
| 171 17th Street, NW - Suite 1100 | (GA Bar No. 344016) |
| Atlanta, GA 30363 | KILPATRICK STOCKTON LLP |
| Telephone:  (404) 815-3000 | 1100 Peachtree Street, Suite 2800 |
| Facsimile: (404) 214-7930 | Atlanta, Georgia 30309-4530 |
| Email:  bbaldwin@burr.com | Telephone: (404) 815-6321 |
|  | Facsimile:(404) 815-6555 |
| and | prosenblatt@kilpatrickstockton.com |
|  |  |
| Denise D. Dell-Powell, Esq. | *Attorneys for Waterton Tenside NH, L.L.C.* |
| Georgia Bar No. 217070 |  |
| Burr & Forman, LLP |  |
| 450 S. Orange Avenue, Suite 200 |  |

334687 v4

Orlando, FL 32801
Telephone: (407) 244-0888
Facsimile: (407) 244-0889
Email: ddpowell@burr.com

*Proposed Counsel to Debtor*

### Distribution List

Brad Baldwin
Burr & Forman, LLP
171 17th Street, NW - Suite 1100
Atlanta, GA 30363

Denise D. Dell-Powell, Esq.
Burr & Forman, LLP
450 S. Orange Avenue, Suite 200
Orlando, FL 32801

Thomas W. Dworschak
Office of the United States Trustee
362 Richard B. Russell Building
75 Spring Street, S.W.
Atlanta, Georgia 30303

Paul M. Rosenblatt
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530

# **EXHIBIT "A"**

*Cash Collateral Budget*

**Tivoli Tenside**
**Budget Nov 2010-Feb 2011"**

336    Units

| Acct. No.-Sub Code | Description | Nov 2010 | Dec 2010 | Jan 2011 | Feb 2011 | Nov - Feb 2010 - 2011 Budget |
|---|---|---|---|---|---|---|
| **Vacancy %** | | **9.2%** | **9.2%** | **9.2%** | **9.2%** | **9.6%** |
| **# Vacant Units** | | **31** | **31** | **31** | **31** | **32** |
| 4000 | **INCOME:** | | | | | |
| 4001 | Market Rent | 472,854 | 472,854 | 472,854 | 472,854 | 1,891,416 |
| 4005 | Less: Loss to Lease | (6,206) | (6,003) | (5,806) | (5,651) | (23,666) |
| 4010 | Gross Possible | 466,648 | 466,851 | 467,048 | 467,203 | 1,867,750 |
| 4015 | Commercial Gross Possible | 26,000 | 26,000 | 26,000 | 26,000 | 104,000 |
| 4030 | Less: Arrears Written Off | (1,000) | (1,000) | (1,000) | (1,000) | (4,000) |
| 4050 | Less: Vacancy Loss | (42,219) | (43,626) | (43,626) | (43,626) | (173,098) |
| 4060 | Less: Model | (2,966) | (2,966) | (2,966) | (2,966) | (11,864) |
| 4061 | Less: Employee | (509) | (509) | (509) | (509) | (2,036) |
| 4080 | Less: Concessions | (106,765) | (105,936) | (103,108) | (100,162) | (415,970) |
| 4082 | Less: Courtesy Officer Concessions | (3,426) | (3,426) | (3,426) | (3,426) | (13,704) |
| 4115 | Net Rental Income | 335,763 | 335,388 | 338,413 | 341,514 | 1,351,078 |
| 4118 | **OTHER INCOME:** | | | | | |
| 4120 | Plus: Administration Income | 675 | 825 | 825 | 675 | 3,000 |
| 4130 | Plus: Storage | 651 | 651 | 651 | 651 | 2,604 |
| 4134 | Plus: Month to Month Fee | 0 | 0 | 0 | 0 | 0 |
| 4140 | Plus: Laundry Center Income | 1,042 | 1,042 | 1,042 | 1,042 | 4,168 |
| 4180 | Plus: Notice Fees | 0 | 200 | 0 | 200 | 400 |
| 4186 | Plus: Eviction/Warrant | 100 | 100 | 100 | 100 | 400 |
| 4190 | Plus: Late Fees | 695 | 695 | 695 | 695 | 2,780 |
| 4191 | Plus: NSF Fees | 70 | 70 | 70 | 70 | 280 |
| 4200 | Plus: Washer/Dryer in Units Income | 100 | 100 | 100 | 100 | 400 |
| 4204 | Plus: Keys/Locks/Remotes/Cards | 50 | 50 | 50 | 50 | 200 |
| 4205 | Plus: Application Fees | 300 | 550 | 550 | 450 | 1,850 |
| 4209 | Plus: Transfer Fees | 0 | 0 | 250 | 0 | 250 |
| 4210 | Plus: Canc./ Termination Fee | 0 | 1,389 | 0 | 1,390 | 2,780 |
| 4215 | Plus: Pet Fees | 450 | 450 | 450 | 450 | 1,800 |
| 4220 | Plus: Forfeited Sec. Deposits | 330 | 330 | 330 | 270 | 1,260 |
| 4221 | Plus: Interest Income | 0 | 0 | 0 | 0 | 0 |
| 4226 | Plus: Other Income- Retail | 4,923 | 4,923 | 4,923 | 4,923 | 19,693 |
| 4230 | Plus: Damages | 100 | 100 | 100 | 100 | 400 |
| 4500 | Total Other Income | 9,486 | 11,476 | 10,136 | 11,167 | 42,265 |
| 4510 | **UTILITY INCOME:** | | | | | |
| 4525 | Plus: Utility Reimbursement | 1,525 | 1,525 | 1,525 | 1,525 | 6,100 |
| 4530 | Plus: Trash Occupied Income | 1,220 | 1,220 | 1,220 | 1,220 | 4,880 |
| 4531 | Plus: Valet Trash Income | 5,185 | 5,185 | 5,185 | 5,185 | 20,740 |
| 4540 | Plus: Water-Occupied-Income | 10,300 | 10,300 | 10,300 | 10,300 | 41,200 |
| 4545 | Less: Water-Occupied-Expense | 0 | 0 | 0 | 0 | 0 |
| 4999 | **TOTAL INCOME** | **363,479** | **365,093** | **366,779** | **370,911** | **1,466,263** |

Budget - Page 1 of  4

**Tivoli Tenside**
**Budget Nov 2010-Feb 2011"**

336    Units

| Acct. No.-Sub Code | Description | Nov 2010 | Dec 2010 | Jan 2011 | Feb 2011 | Nov - Feb 2010 - 2011 Budget |
|---|---|---|---|---|---|---|
| **Vacancy %** | | **9.2%** | **9.2%** | **9.2%** | **9.2%** | **9.6%** |
| **# Vacant Units** | | **31** | **31** | **31** | **31** | **32** |
| **5000** | **EXPENSES** | | | | | |
| 5002 | **Management Fees** | | | | | |
| 5004 | Management Fees - RAM | 2,181 | 2,191 | 2,201 | 2,225 | 8,798 |
| 5005 | Management Fees - Other | 8,724 | 8,762 | 8,803 | 8,902 | 35,190 |
| 5008 | Total Management Fees | 10,904 | 10,953 | 11,003 | 11,127 | 43,988 |
| **5010** | **GENERAL EXPENSES:** | | | | | |
| 5200 | Office Supplies/General | 625 | 625 | 625 | 625 | 2,500 |
| 5201 | Legal and Professional Fees | 70 | 70 | 70 | 70 | 280 |
| 5202 | Admin Expense - Telephone | 2,208 | 2,208 | 2,208 | 2,208 | 8,832 |
| 5204 | Equipment Lease - Copier | 549 | 375 | 500 | 375 | 1,799 |
| 5205 | Equipment Lease - Security System | 0 | 0 | 0 | 0 | 0 |
| 5207 | Licenses and Dues | 0 | 0 | 1,025 | 0 | 1,025 |
| 5208 | Courier/Shipping/Postage | 190 | 190 | 190 | 190 | 760 |
| 5209 | Credit Reports/3rd Party verification | 630 | 770 | 770 | 630 | 2,800 |
| 5210 | Uniforms | 0 | 600 | 0 | 0 | 600 |
| 5215 | Meals and Mileage | 75 | 75 | 125 | 75 | 350 |
| 5225 | Bank Service Charges | 25 | 25 | 25 | 25 | 100 |
| 5230 | Eviction Fees/Legal Fees | 658 | 658 | 658 | 658 | 2,632 |
| 5235 | Training | 0 | 0 | 0 | 0 | 0 |
| 5255 | Computer Equipment/IT Support/Sol | 1,500 | 1,100 | 1,100 | 1,100 | 4,800 |
| 5260 | Other G & A Expenses | 500 | 500 | 500 | 500 | 2,000 |
| 5268 | Model Unit Utilities | 150 | 150 | 150 | 150 | 600 |
| 5270 | Corporate Unit Cable Expense | 0 | 0 | 0 | 0 | 0 |
| 5274 | Corporate Unit Utilities | 0 | 0 | 0 | 0 | 0 |
| 5276 | Corporate Unit Furniture | 0 | 0 | 0 | 0 | 0 |
| 5280 | Corporate Unit Software | 0 | 0 | 0 | 0 | 0 |
| 5290 | Corporate Unit Other | 0 | 0 | 0 | 0 | 0 |
| 5299 | Total General Expenses | 7,180 | 7,346 | 7,946 | 6,606 | 29,078 |
| **5400** | **ADVERTISING & PROMOTIONAL:** | | | | | |
| 5410 | Apartment Guide | 4,287 | 4,287 | 4,287 | 3,888 | 16,749 |
| 5430 | Signage | 0 | 600 | 500 | 0 | 1,100 |
| 5440 | Resident Referral | 750 | 1,500 | 1,500 | 1,500 | 5,250 |
| 5449 | Start up Marketing | 0 | 0 | 0 | 0 | 0 |
| 5450 | Collateral | 0 | 500 | 500 | 500 | 1,500 |
| 5460 | Locator Services | 3,791 | 3,791 | 3,791 | 3,791 | 15,165 |
| 5470 | Billboards | 1,000 | 1,000 | 1,000 | 1,000 | 4,000 |
| 5475 | Promotional/ Resident Activities | 400 | 800 | 400 | 400 | 2,000 |
| 5480 | Other | 100 | 100 | 100 | 100 | 400 |
| 5499 | Total Advertising & Promotion | 10,328 | 12,578 | 12,078 | 11,179 | 46,164 |
| **5500** | **PROPERTY REPAIRS/MAINT.:** | | | | | |
| 5510 | Miscellaneous Supplies/Hardware/E | 600 | 600 | 600 | 700 | 2,500 |
| 5511 | Structural Repairs | 875 | 875 | 875 | 875 | 3,500 |
| 5523 | Glass/Screens | 0 | 500 | 0 | 750 | 1,250 |
| 5526 | HVAC Repairs/Maint. | 150 | 150 | 150 | 700 | 1,150 |
| 5529 | Appliance Parts/Repairs | 200 | 200 | 200 | 200 | 800 |
| 5532 | Plumbing Repairs | 400 | 400 | 400 | 400 | 1,600 |
| 5535 | Electrical Repairs | 550 | 550 | 550 | 550 | 2,200 |
| 5541 | Water Damage - Extraction | 0 | 250 | 0 | 250 | 500 |
| 5542 | Water Damage - Repairs | 0 | 0 | 0 | 0 | 0 |

**Tivoli Tenside**
Budget Nov 2010-Feb 2011"

336  Units

| Acct. No.-Sub Code | Description | Nov 2010 | Dec 2010 | Jan 2011 | Feb 2011 | Nov - Feb 2010 - 2011 Budget |
|---|---|---|---|---|---|---|
| **Vacancy %** | | **9.2%** | **9.2%** | **9.2%** | **9.2%** | **9.6%** |
| **# Vacant Units** | | **31** | **31** | **31** | **31** | **32** |
| 5544 | Security/Locks | 3,700 | 3,500 | 3,500 | 3,700 | 14,400 |
| 5547 | Fire/Life/Safety Repair and Maintena | 1,025 | 6,650 | 125 | 125 | 7,925 |
| 5548 | Fire/Life/Safety Inspections | 0 | 0 | 300 | 0 | 300 |
| 5550 | Apartment Interior Repairs | 50 | 50 | 50 | 50 | 200 |
| 5556 | Carpet Repairs | 0 | 100 | 100 | 0 | 200 |
| 5570 | Common Area Repairs | 150 | 150 | 150 | 150 | 600 |
| 5573 | Gate Remotes/Swipe Cards | 75 | 560 | 560 | 75 | 1,270 |
| 5574 | Gate Repair/Maintenance | 650 | 650 | 650 | 650 | 2,600 |
| 5576 | Office/Club/Amenity | 100 | 100 | 100 | 100 | 400 |
| 5578 | Office/Club/jEquipment | 0 | 200 | 150 | 0 | 350 |
| 5579 | Pool Repair | 100 | 100 | 100 | 100 | 400 |
| 5582 | Signs | 0 | 0 | 0 | 0 | 0 |
| 5640 | Pools/Courts/Club/Laundry | 0 | 0 | 0 | 0 | 0 |
| 5650 | Readying Apartments | 4,405 | 4,405 | 4,405 | 3,735 | 16,950 |
| 5655 | Carpet Cleaning | 885 | 885 | 885 | 885 | 3,540 |
| 5660 | Truck and Equipment | 250 | 250 | 250 | 250 | 1,000 |
| 5661 | Maintenance - Cell Phones | 85 | 85 | 85 | 85 | 340 |
| 5665 | Pest Control | 400 | 400 | 400 | 400 | 1,600 |
| 5670 | Maintenance Contract Services | 750 | 5,170 | 1,710 | 1,710 | 9,340 |
| 5675 | Total Repairs and Maint. | 15,400 | 26,780 | 16,295 | 16,440 | 74,915 |
| 5680 | **GROUNDS MAINT.:** | | | | | |
| 5682 | Grounds-Labor/Service | 930 | 930 | 930 | 930 | 3,720 |
| 5684 | Grounds-Labor/Materials | 0 | 0 | 0 | 0 | 0 |
| 5686 | Grounds-Labor/Irrigation | 0 | 270 | 0 | 0 | 270 |
| 5688 | Grounds-Labor/Upgrade | 0 | 0 | 0 | 0 | 0 |
| 5695 | Total Grounds/Landscaping | 930 | 1,200 | 930 | 930 | 3,990 |
| | **PAYROLL:** | | | | | |
| | **Bi-weekly pay periods** | **2** | **2** | **2** | **2** | **26** |
| 5710 | Salaries - Mgmt./Leasing/Bkkpr | 16,607 | 16,607 | 16,607 | 16,607 | 66,428 |
| 5720 | Overtime | 2,082 | 2,082 | 2,082 | 2,082 | 8,330 |
| 5730 | Rental & Renewal Bonus | 1,650 | 1,900 | 1,900 | 1,800 | 7,250 |
| 5740 | Maint/Interior Cleaning | 5,375 | 5,375 | 5,375 | 5,375 | 21,500 |
| 5760 | Landscaping/Ext. Porter | 2,551 | 2,551 | 2,551 | 2,551 | 10,204 |
| 5770 | Incentive Pay | 951 | 143 | 143 | 951 | 2,188 |
| 5775 | Employee Bonus | 1,176 | 1,176 | 1,176 | 1,176 | 4,704 |
| 5780 | Payroll Taxes and Benefits | 3,374 | 3,312 | 3,312 | 3,390 | 13,388 |
| 5781 | Workmen's Compensation Prem. | 617 | 606 | 606 | 620 | 2,449 |
| 5782 | Health Insurance | 3,465 | 3,401 | 3,401 | 3,482 | 13,749 |
| 5790 | Casual Labor | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 |
| 5792 | Other Payroll Costs | 165 | 165 | 165 | 165 | 660 |
| 5798 | Total Payroll | 40,013 | 39,318 | 39,318 | 40,199 | 158,850 |
| 5900 | **UTILITIES:** | | | | | |
| 5910 | Electricity - Common Area | 12,500 | 12,500 | 12,500 | 12,500 | 50,000 |
| 5920 | Electricity - Vacants | 2,325 | 2,325 | 2,325 | 2,325 | 9,300 |
| 5930 | Water and Sewer Expense | 15,200 | 15,000 | 15,000 | 15,000 | 60,200 |
| 5932 | Cable Expense | 150 | 150 | 150 | 150 | 600 |
| 5935 | Gas Expense - Common Area | 75 | 75 | 75 | 75 | 300 |
| 5940 | Trash Removal | 875 | 875 | 875 | 875 | 3,500 |
| 5941 | Valet Trash | 3,500 | 3,500 | 3,500 | 3,500 | 14,000 |
| 5942 | Utility Billing Expense | 750 | 750 | 750 | 775 | 3,025 |
| 5949 | Total Utilities | 35,375 | 35,175 | 35,175 | 35,200 | 140,925 |

**Tivoli Tenside**
Budget Nov 2010-Feb 2011"

336    Units

| Acct. No.-Sub Code | Description | Nov 2010 | Dec 2010 | Jan 2011 | Feb 2011 | Nov - Feb 2010 - 2011 Budget |
|---|---|---|---|---|---|---|
| | **Vacancy %** | **9.2%** | **9.2%** | **9.2%** | **9.2%** | **9.6%** |
| | **# Vacant Units** | **31** | **31** | **31** | **31** | **32** |
| 6000 | **FIXED EXPENSES:** | | | | | |
| 6030 | Real Property Taxes | 28,650 | 28,650 | 28,650 | 28,650 | 114,600 |
| 6035 | Personal Property Taxes | 0 | 0 | 0 | 0 | 0 |
| 6038 | Tax Consulting | 0 | 0 | 0 | 0 | 0 |
| 6040 | Insurance | 5,986 | 7,500 | 7,500 | 7,500 | 28,486 |
| 6099 | Total Fixed Expense | 34,636 | 36,150 | 36,150 | 36,150 | 143,086 |
| | Total Contingency | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| | **Operating Expense Excl. Other** | **159,767** | **174,500** | **163,896** | **162,832** | **660,995** |
| | **N O I Before Other Expenses** | **203,712** | **190,593** | **202,883** | **208,079** | **805,268** |
| 6100 | **OTHER EXPENSES:** | | | | | |
| 6140 | Marketing Costs | | | | | 0 |
| 6190 | Total Other Expenses | 0 | 0 | 0 | 0 | 0 |
| 6199 | **Total Operating Expense** | **159,767** | **174,500** | **163,896** | **162,832** | **660,995** |
| 6299 | **Net Operating Income** | **203,712** | **190,593** | **202,883** | **208,079** | **805,268** |
| 6300 | **CASUALTY LOSS:** | | | | | |
| 6301 | Fire, General | 0 | 0 | 0 | 0 | 0 |
| 6302 | Fire, Kitchen | 0 | 0 | 0 | 0 | 0 |
| 6320 | Insurance Claims | 0 | 0 | 0 | 0 | 0 |
| 6340 | Total Net Casualty Loss | 0 | 0 | 0 | 0 | 0 |
| 6500 | **DEBT SERVICE:** | | | | | |
| 6505 | Interest Expense | 111,000 | 100,000 | 100,000 | 100,000 | 411,000 |
| 6520 | Waterton's Professional Fees | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| 6530 | Debtors Professional Fees | 15,000 | 15,000 | 15,000 | 15,000 | 60,000 |
| 6595 | Total Debt Service | 136,000 | 125,000 | 125,000 | 125,000 | 511,000 |
| 6999 | **Income After Debt Service** | **67,712** | **65,593** | **77,883** | **83,079** | **294,268** |
| 8000 | **CAPITAL IMPROVEMENTS** | | | | | |
| 8040 | Structural Improvements | 0 | 1,000 | 0 | 0 | 1,000 |
| 8070 | Appliance Repalcements | 0 | 0 | 0 | 0 | 0 |
| 8130 | Carpet Replacement | 2,775 | 2,775 | 2,775 | 2,775 | 11,100 |
| 8135 | Mini Blind Replacement | 275 | 275 | 275 | 225 | 1,050 |
| 8900 | Other Special Items | 0 | 0 | 0 | 0 | 0 |
| 8990 | **Total Capital Improvements** | **3,050** | **4,050** | **3,050** | **3,000** | **13,150** |
| 8992 | **TRANSFER NON-OP ITEMS TO BS** | | | | | |
| 8994 | Capitalized Improvements | 3,050 | 4,050 | 3,050 | 3,000 | 13,150 |
| 8995 | Total Transfers | 3,050 | 4,050 | 3,050 | 3,000 | 13,150 |
| 6299 | Net Operating Income | 203,712 | 190,593 | 202,883 | 208,079 | 805,268 |
| | Less: Casualty Loss Expense | 0 | 0 | 0 | 0 | 0 |
| | Less: Expensed Prop. Improv. | 0 | 0 | 0 | 0 | 0 |
| | **Net Income per Financial Stmts.** | **203,712** | **190,593** | **202,883** | **208,079** | **805,268** |
| | Less: Capped Prop. Improv. | 3,050 | 4,050 | 3,050 | 3,000 | 13,150 |
| | Less: Owner Realted Expenses | 0 | 0 | 0 | 0 | 0 |
| | Less: Principal | 0 | 0 | 0 | 0 | 0 |
| | Less: Interest | 111,000 | 100,000 | 100,000 | 100,000 | 411,000 |
| | Less: Other Debt Service Items | 25,000 | 25,000 | 25,000 | 25,000 | 100,000 |
| | **Cash Flow** | **64,662** | **61,543** | **74,833** | **80,079** | **281,118** |

C:\Documents and Settings\bbaldwin\Application Data\Hummingbird\DM\Temp\[BF-ATL-#334850-v1-Budget_--_Cash_Collateral_12-8-10_(Ten_Side).XLS